IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| CARMEN GRICCO | : | NO. 01-90 |

### ORDER-MEMORANDUM

**AND NOW** this 15th day of January, 2025, upon consideration of Defendant Carmen Gricco's "Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)" and all documents filed in connection therewith, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

On May 17, 2002, a jury found Carmen Gricco guilty of fourteen counts of a Superseding Indictment, including one count of conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846; one count of manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1); one count of possession of methylamine for manufacturing methamphetamine, in violation of 21 U.S.C. § 843; one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h); nine counts of money laundering and aiding and abetting money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2; and one count of possession of a machine gun, in violation of 18 U.S.C. § 922(o). That same day, Gricco pled guilty to a bifurcated count that charged him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The charges arose out of Gricco's involvement in a sophisticated methamphetamine operation that, at the time of his arrest, he was conducting from the basement of his home where he lived with his young daughter and kept firearms. On December 6, 2002, we sentenced Gricco

to life imprisonment based on his total offense level of 48, criminal history category of I, and the then-mandatory United States Sentencing Guidelines.[1]

Following sentencing, Gricco filed a direct appeal and § 2255 habeas motion, as well as numerous other motions and letter requests, seeking relief from his conviction and sentence. On July 5, 2022, we dismissed and denied the most recent of these motions. See In re Carmen Gricco, Civ. A. No. 22-2020 (E.D. Pa. July 5, 2022) (order denying and dismissing pro se motion for either habeas relief or a writ of coram nobis). Gricco now seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), asking that we reduce his sentence to one of time served (approximately 24 years). The Government opposes Gricco's Motion.

We cannot ordinarily modify a defendant's sentence after it has been imposed. See 18 U.S.C. § 3582(c); see also Dillon v. United States, 560 U.S. 817, 819 (2010). However, the First Step Act provides for compassionate release, permitting us to reduce an inmate's term of imprisonment "after considering the factors set forth in [Title 18] section 3553(a)" if we find that "extraordinary and compelling reasons warrant . . . a reduction" and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13. The United States Sentencing Commission's pertinent policy statement, U.S.S.G. § 1B1.13, provides a list of extraordinary and compelling reasons that may warrant a reduction of sentence. The first four of those reasons, in paragraphs (b)(1)-(4), concern medical circumstances, age, family circumstances, and circumstances in which the defendant has been a victim of abuse while in prison. For each of these four reasons, the Sentencing Commission

---

[1] Gricco's base offense level was 38 due to his responsibility for more than 1.5 kilograms of methamphetamine. (Presentence Investigation Report ¶ 58.) That base offense level was increased by two because he possessed numerous weapons in connection with his drug offense, and it was increased by another six because his manufacture of methamphetamine created a substantial risk of harm to a minor, i.e., his own daughter. (Id. ¶¶ 59, 61.) The base offense level was increased by another two because Gricco obstructed justice by fabricating evidence and perjuring himself at trial. (Id. ¶¶ 37, 65.)

has precisely defined what a defendant must establish in order to obtain a reduction.  See id. § 1B1.13(b)(1)-(4).

Gricco does not seek a sentence reduction based on any of those first four reasons.  Rather, he primarily seeks a reduction based on a November 1, 2023 amendment to § 1B1.3(b) that provides that an "unusually long sentence," in combination with a non-retroactive change in the law, can also give rise to an extraordinary and compelling reason to modify a sentence.  U.S.S.G. § 1B1.13(b)(6).  Specifically, under § 1B1.13(b)(6), a court may consider:

> a nonretroactive change in law . . . when (1) "a defendant received an unusually long sentence[,]" (2) the defendant "has served at least 10 years of the term of imprisonment," (3) an intervening law change has produced "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," and (4) after the court gives "full consideration of the defendant's individualized circumstances."

United States v. Rutherford, 120 F.4th 360, 367 (3d Cir. 2024) (alteration in original) (quoting U.S.S.G, § 1B1.13(b)(6)).  Gricco argues that the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), which made the United States Sentencing Guidelines advisory instead of mandatory, id. at 245, constitutes just such a nonretroactive change in law, and he maintains that if he were sentenced today for his same crimes, he would receive a much shorter sentence than life imprisonment.[2]  He thus asks us to reduce his current sentence to one of time served.

---

[2] Gricco also suggests that he may be entitled to relief under Alleyne v. United States, 570 U.S. 99 (2013), which declared that any fact that increases a defendant's statutory mandatory minimum sentence must be found by a jury beyond a reasonable doubt.  Id. at 108.  Specifically, Gricco argues that his sentence is not consistent with Alleyne's directive because the Court, not the jury, made the factual determination that he was responsible for more than 1.2 kilograms of methamphetamine when calculating his advisory Guideline range.  However, "Alleyne did not curtail a sentencing court's ability to find facts relevant in selecting a sentence within the prescribed statutory range." U.S. v. Smith, 751 F.3d 107, 117 (3d Cir. 2014) (citation omitted).  Here, Gricco does not argue that the factual finding as to the quantity of drugs for which he was responsible impacted the statutory range for his offenses.  Accordingly, he cannot rely on Alleyne as a basis for compassionate release.  See United States v. Freeman, 763 F.3d 322, 336 (3d Cir.

The Government argues in response that the Sentencing Commission exceeded its authority in crafting the "unusually long sentence" provision. Notably, the Government made this same argument in the recent case of United States v. Rutherford, which concerned whether the First Step Act's changes to the penalties for § 924(c) offenses could be considered under that provision, and the United States Court of Appeals for the Third Circuit refused to hold so broadly. 120 F.4th at 377 ("The question we are addressing calls for an examination of § 924(c), not a far-ranging examination of all changes in laws affecting criminal sentences."). Moreover, in ultimately holding that the non-retroactive changes to § 924(c) could not be considered under § 1B1.12(b)(6), the Rutherford court primarily reasoned that such consideration would contravene "Congress's explicit instruction in [§ 924(c)] that the change be nonretroactive," and it emphasized that it was "not suggesting that a change in law could never be considered in the compassionate release eligibility context." Id. at 377 n.23. Rutherford thereby refused to hold that the "unusually long sentence" provision is invalid in all contexts and left open the possibility that the change in law accomplished by Booker, which only courts (not Congress) have declared to be nonretroactive, could be considered under that provision. See, e.g., Lloyd v. United States, 407 F.3d 608, 615-16 (3d Cir. 2005) (concluding that Booker is not retroactive).

Given Rutherford's limited holding, we will assume without deciding that we may consider Booker's nonretroactive change to the law in determining whether Gricco presents an extraordinary and compelling reason for compassionate release. To take advantage of Booker, however, Gricco must also establish that its application in his case would "produce a gross disparity between the sentence being served and the sentence likely to be imposed at th[is] time." U.S.S.G. § 1B1.13(b)(6). To that end, we observe that if Gricco were sentenced today, his previous

---

2014) (explaining that a judicial determination of drug quantities for purposes of determining an applicable Guideline range does not violate Alleyne).

4

total offense level of 48 would be reduced to a 46 because of the interim 2-level decrease in the base offense level for drug crimes involving more than 1.5 kg of methamphetamine from a 38 to a 36.  See U.S.S.G. § 2D1.1(c).  However, this new total offense level of 46, combined with Gricco's criminal history category of I, would still produce a Guideline range of life imprisonment under the Guideline's sentencing table.  Indeed, Gricco would have to earn a total offense level of 42, i.e., a full four levels lower than his current level, in order to be assigned an advisory Guideline range that includes a term less than life in prison and, even then, the recommended range of 360 months to life would still encompasses his current life sentence.  Under these circumstances, we cannot conclude that there is a "gross disparity" between the previously-imposed mandatory sentence of life imprisonment and the sentence likely to be imposed with the advisory sentence of life under the now-applicable Guidelines.  Cf. United States v. Garcia, Crim. A. No. 93-536, 2024 WL 749010, at *7 (D.N.J. Feb. 23, 2024) (concluding that a defendant's life sentence is not "unusually long" under § 1B1.13(b)(6) where the current advisory Guideline range for defendant's crime was still life).  We thus find that § 1B1.13(b)(6) does not provide Gricco with an extraordinary and compelling reason to reduce his life sentence to one of time served.

Gricco also seeks a reduction in sentence under the catch-all provision in § 1B1.13(b)(5), which permits courts to find an extraordinary and compelling reason for release where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."  U.S.S.G. § 1B1.13(b)(5).  In arguing for application of the catch-all, Gricco points out that he (1) is 72 years old; (2) suffers from a variety of medical issues, including legal blindness/low vision due to cataracts in both eyes, mobility issues that confine him to a wheelchair, high blood pressure, hyperlipidemia, osteoarthritis, and antisocial personality disorder; (3) enjoys a strong family support system; and

(4) has made recent efforts to engage in available programming, including anger management, finance, and banking. He maintains that these factors, combined with the 24 years he has spent in prison and Booker's change in the law, give rise to an extraordinary and compelling reason for release that is of similar gravity to the specific qualifying circumstances set forth in § 1B1.13(b)(1)-(4).

However, we must view the additional circumstances that Gricco identifies in the context of § 1B1.13 as a whole. While we are sympathetic to his medical circumstances, his medical conditions are not of the type or gravity that the Sentencing Commission has explicitly stated in § 1B1.13(b)(1) may support compassionate release. See U.S.S.G. § 1B1.13(b)(1) (identifying qualifying medical circumstances as terminal illness; a serious condition from which the defendant is not expected to recover that substantially diminishes the defendant's ability to provide self-care in prison; and/or a condition that risks a serious deterioration in health or death for which adequate care is not available in prison). Indeed, Gricco tacitly acknowledges his inability to satisfy the requirements for release based on medical circumstances because he does not request release under § 1B1.13(b)(1).[3] Similarly, while Gricco asks us to consider his age in conjunction with his medical condition and length of incarceration, he does not ground his request for release on § 1B1.13(b)(2), which states that a defendant's age may support release where he "(A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Given the Sentencing Commission's pointed instructions in § 1B1.13(b)(1) and § 1B1.13(b)(2) regarding when medical circumstances and age support a sentence reduction, we will not permit Gricco to avoid the limitations inherent in these provisions by arguing instead

---

[3] If Gricco's medical conditions progress to a point where a motion for reduction of sentence under § 1B1.13(b)(1) becomes viable, he may, of course, reapply for a reduction at that time.

that his medical conditions and age support his release under § 1B1.13(b)(5)'s more general catch-all provision. Likewise, we will not consider Booker's nonretroactive change in law under the catch-all when we have found that Gricco has not satisfied the requirements set forth in § 1B1.13(b)(6). And, finally, while we applaud Gricco's newfound enthusiasm for educational programming in the prison system and we are heartened to hear of the continuing support of his family, these circumstances do not constitute extraordinary and compelling reasons for Gricco's immediate release from incarceration. For all of these reasons, we conclude that Gricco has not established an extraordinary and compelling reason for release under the catch-all provision in § 1B1.13(b)(5).

Finally, we conclude that even if Gricco had established an extraordinary and compelling reason for release under § 1B1.13(b)(5) or (b)(6), the § 3553(a) factors do not support his requested sentence reduction to a period of time served. As noted above, before granting compassionate release, we must consider the factors set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A). The § 3553(a) factors for our consideration are: (i) the nature and circumstances of the offense, (ii) the history and characteristics of the defendant, (iii) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, (iv) the need to adequately deter criminal conduct, (v) the need to protect the public from the defendant, (vi) the need to provide the defendant with necessary rehabilitation, and (vii) the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553(a).

Here, Gricco's crimes were particularly egregious and posed a great danger to the public. The evidence at trial established that in late 1995, Gricco, along with his long-time friend and co-conspirator, went into the highly dangerous methamphetamine business. (Presentence Investigation Report ¶¶ 11-12.) Gricco cooked the drugs, and his co-conspirator cut them, dried them, and sold the final product on the street. (Id. ¶ 12.) For almost five years, from January of

1996 to December of 2000, Gricco manufactured methamphetamine in a variety of locations, including Maryland; his mother-in-law's home in Ridley Park, Pennsylvania; a farm in Newtown Square, Pennsylvania; and a lab in the basement of his own Ridley Park home, which he purchased in 1998 and shared with his wife and daughter, who was just eight years old at the time of his 2002 trial. (Id. ¶¶ 12-17, 19, 21, 61.)

In a search of Gricco's home in December of 2000, federal agents found his fully operational methamphetamine lab, along with methamphetamine in various stages of production. (Id. ¶¶ 22, 25.) Additionally, agents found a silencer-equipped machine gun and ammunition in a briefcase under Gricco's office desk, as well as a rifle in the stairwell leading to the basement. (Id. ¶ 28.) In subsequent searches of Gricco's mother-in-law's house, which was less than a mile from Gricco's, agents recovered a whole arsenal of firearms in the basement,[4] and also discovered a locked basement storage room containing more methamphetamine manufacturing equipment, chemicals, DL-methamphetamine, and additional firearms and silencers. (Id. ¶¶ 30, 59.) All told, Gricco was held responsible for possession, distribution, and/or manufacture of more than 1.5 kilograms of methamphetamine and possession of approximately twenty-five firearms. (Id. ¶¶ 28, 30-31, 58.) Thus, the evidence was that Gricco's methamphetamine operation was long-standing and productive, was enhanced by his possession of considerable firepower, and posed a great danger to the community and Gricco's family, including his young child.

With respect to his own history and characteristics, Gricco argues that he is a non-violent man, whose three criminal convictions prior to his conviction in this case had occurred in the 1970s, when he was in his 20s, and did not result in any term of imprisonment. However, we are far from convinced that Gricco is properly characterized as non-violent when he has a past

---

[4] Specifically, a footlocker belonging to Gricco that was in the basement contained eighteen firearms, a silencer, and an "enormous" amount of ammunition. (Id. ¶ 31.)

conviction for involuntary manslaughter arising out of circumstances in which he killed a man by shooting him three times in a bar, and when, in this case, he possessed a whole arsenal of firearms, including a machine gun with a silencer. (Id. ¶¶ 28-29, 73.) Furthermore, while Gricco emphasizes that we were unable to consider any mitigating factors concerning his criminal history at his 2002 sentencing because of the mandatory nature of the Guidelines, it is plain that any such mitigating factors would have been of negligible value when he had already been assigned the lowest Criminal History Category of I. Finally, Gricco asserts that he has been rehabilitated and is remorseful, but his extensive and ongoing disciplinary history in prison belies his claims of rehabilitation,[5] and the most recent motion that he filed in May of 2022, in which he again sought to invalidate his conviction and sentence, undermines his current claims of remorse. See In re Gricco, Civ. A. No. 22-2020.

In sum, because of the severity of the offenses, and the related needs for deterrence, just punishment, and protection of the public, and because Gricco's history and characteristics suggest no basis for reduction under the § 3553(a) factors, a very lengthy sentence, greater than the 24

---

[5] The Government recounts Gricco's disciplinary history as follows:
> Gricco . . . has committed 51 disciplinary infractions, ranging from simple refusals to obey orders to acts of violence. These include: having a dangerous weapon (2017); fighting (2003 and 2008); and assault without serious injury (twice in 2007, and once each in 2008, 2009, 2018, and 2020). He frequently refuses work or program assignments, as recently as this year. Specifically, his most recent infractions are: interfering with security devices (Nov. 29, 2019); threatening bodily harm and refusing to obey an order (June 23, 2020); assaulting without serious injury (June 24, 2020); refusing to obey an order (July 13, 2021); refusing to obey an order (August 12, 2021); and destroy property $100 or less (Nov. 12, 2021), followed by nine separate instances of refusing work/program assignment (Jan. 24, 2022; June 3, 2022; July 4, 2022; Aug. 25, 2022; July 13, 2023; Sept. 29, 2023; Oct. 13, 2023; Feb. 16, 2024; and April 9, 2024).

(Gov't Resp. at 6-7.) Gricco argues that this history overstates his disciplinary history, but the fact remains that he has been written up for various violations of prison rules throughout his prison tenure, including very recently. Accordingly, we do not discount it.

years that he has served, was—and remains—warranted. Thus, Gricco's request that we reduce his sentence to time served does not find support in the § 3553(a) factors.

    For all of these reasons, we deny Gricco's Motion for Compassionate Release.

BY THE COURT:

/s/ John R. Padova, J.

_____
John R. Padova, J.